STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. ROBERT T. CONKLIN, DEFENDANT-APPELLANT.

Argued September 8, 1969—Decided October 27, 1969.

542

 

*Mr. John W. Gilbert* argued the cause for the appellant (*Mr. Stanley C. Van Ness,* Public Defender, attorney).

*Mr. William J. Hughes,* First Assistant County Prosecutor, argued the cause for the respondent (*Mr. James A. O'Neill,* Cape May County Prosecutor, attorney).

PER CURIAM : The defendant Robert T. Conklin was tried on charges, *inter alia,* of having murdered Oliver Lindsay Clarkson and his wife Ethyl Williamson Clarkson. The jury found him guilty of murder in the first degree without recommendation of life imprisonment and he was sentenced to death on each of the two murder charges. He appealed to this Court as of right and raises seven points of alleged error, all addressed substantially to the death sentences rather than the finding of guilt.

Sometime before November 21, 1968 the defendant Conklin who was 32 years of age, and his companions John Matthew Sheridan aged 20 and David Willetts aged 17, made plans to rob the Clarksons and burglarize their home in Tuckahoe. Conklin had done some carpentry work and had watched a baseball game with Mr. Clarkson on a television set at the Clarkson home. He knew that the Clarksons were in their sixties and believed that they kept substantial sums of money at home. He had suggested the Clarkson place to his two companions as a likely one for the criminal venture and during the evening of November 21 the three of them, fully armed, set out from Ocean City for Tuckahoe in a car driven by Sheridan. They arrived at the Clarkson home and Conklin was the first to enter. He did not wear a stocking mask although his companions did. He carried a .38 caliber revolver wihch belonged to Willetts but which Willetts had turned over to him before they entered the house. Mr. Clark-

son was beaten, tied up and fatally shot in the neck. Mrs. Clarkson was beaten and fatally shot in the top of the head. The house was ransacked and set afire and the three then left with their loot for Ocean City.

Although the defendant had given the State a voluntary statement in which he had denied participation in the killings, the State's evidence on its own case overwhelmingly established the contrary. When the defendant took the witness stand in his own defense he abandoned his earlier denial and stated that he had fired his gun in order "to scare Mrs. Clarkson" and had hit Mr. Clarkson by accident. He testified that he did not remember how Mrs. Clarkson was killed. But as part of the State's case there was ample direct testimony on that subject by both Sheridan and Willetts who had, prior to the trial, entered pleas of *non vult* on the murder charges against them.

Sheridan testified that while he was downstairs in the house Mrs. Clarkson, unclothed, came down the steps from the upper floor, followed by the defendant with the .38 caliber revolver in his hand; that the defendant sent him upstairs to search for valuables and while there he heard several shots; that he came down and saw that both of the Clarksons had been shot; that at that point the defendant told him that "Mr. Clarkson was hit by accident"; and that later the defendant told him that after Mr. Clarkson had been shot, Mrs. Clarkson had said, "I know you" and that he then "had to shoot her." Willetts testified that he went into the kitchen and heard shots from the living room; that he returned to the living room where the defendant told him that he had "killed the old man"; and that at that point the defendant put the .38 caliber revolver on the top of Mrs. Clarkson's head and said "Should I? I have got to" and he pulled the trigger.

In his own testimony the defendant said that when he entered the house Mr. Clarkson asked him what he was doing there. The defendant said he then hit Mr. Clarkson with his hand and when he heard Mrs. Clarkson shouting upstairs he

went upstairs and hit her with the pistol "with all I could throw behind it." He stated that he later shot Mr. Clarkson accidentally while intending to frighten Mrs. Clarkson and that he had no recollection as to how Mrs. Clarkson had been shot. He denied that Mrs. Clarkson had said she knew him but fully acknowledged his participation in the robbery and that he had set the couch afire before he left the Clarkson home. He denied that shortly after the killings he had threatened his accomplices and others, as several witnesses for the State had testified, but acknowledged that he had threatened Willetts while in jail.

▮ Although the trial court could have submitted the case to the jury under both the felony murder (*N. J. S. A.* 2A:113-1) and the premeditated murder (*N. J. S. A.* 2A: 113-2) statutes it confined itself, with the State's consent, to felony murder. See *State v. Mayberry,* 52 *N. J.* 413, 432 (1968), *cert.* den., 393 *U. S.* 1043, 89 *S. Ct.* 673, 21 *L. Ed.* 2d 593 (1969). Its charge properly instructed the jury that if the evidence established beyond reasonable doubt that the killings occurred during the course of a robbery in which the defendant participated then its verdict must be guilty of murder in the first degree, with or without recommendation of life imprisonment as the jury in its discretion determined. *N. J. S. A.* 2A:113-4; see *State v. Mathis,* 47 *N. J.* 455, 466-468 (1966). The jury found the defendant guilty of murder in the first degree and under the evidence and the charge it could not properly have found otherwise. The jury also found, after deliberation, that there should not be any recommendation of life imprisonment and, accordingly, the mandated death penalty was imposed. In his effort to have the death penalty set aside and replaced by life imprisonment the defendant advances points of alleged error which will be dealt with in the order set forth in the brief submitted on his behalf by the Public Defender.

▮ The defendant's first point attacks the admission of three photographs as "more prejudicial than probative." The photographs were in black and white and were taken by

the State Police after the bodies of the Clarksons had been discovered and had been placed outside their home. One photograph showed Mr. Clarkson's body lying on a sheet, clad in a sleeveless undershirt, undershorts and slippers. His hands were bound and he was blindfolded. The point of entry of the bullet in his neck appeared rather clearly. A second photograph showed the nude body of Mrs. Clarkson. Her left ear had been severely lacerated and she was bloodied. A third photograph was a closeup of the entrance wound in Mrs. Clarkson's scalp. The photographs were introduced by the State early in the trial and at a point when the defendant was still denying his guilt. They indicated the actual condition of the bodies when found, the entrance points of the gunshot wounds, and the nature and extent of the injuries inflicted. They were clearly relevant and were fairly admitted within the trial court's discretion. See *State v. Smith,* 32 *N. J.* 501, 525 (1960), *cert.* den., 364 *U. S.* 936, 81 *S. Ct.* 383, 5 *L. Ed. 2d* 367 (1961); *State v. Hale,* 45 *N. J.* 255, 262 (1965), appeal dismissed, 384 *U. S.* 884, 16 *L. Ed. 2d* 1001 (1966); *State v. Coleman,* 46 *N. J.* 16, 26 (1965), *cert.* den., 383 *U. S.* 950, 86 *S. Ct.* 1210, 16 *L. Ed. 2d* 212 (1966); *State v. Gosser,* 50 *N. J.* 438, 448 (1967), *cert.* den., 390 *U. S.* 1035, 88 *S. Ct.* 1434; 20 *L. Ed. 2d* 295 (1968).

In *State v. Smith, supra,* we pointed out that the admission of photographs having some probative value, even where cumulative and somewhat inflammatory, rests with the discretion of the trial judge, "whose ruling will not be overturned save for abuse, as where logical relevance will unquestionably be overwhelmed by the inherently prejudicial nature of the particular picture." 32 *N. J.,* at 525. There was no such showing here. The photographs tended to support the State's position as to the precise manner in which the killings occurred and as to the particularly brutal nature of the defendant's conduct. They may have been "somewhat inflammatory" (*cf. State v. Gosser, supra,* 50 *N. J.,* at 448) but hardly more so than the vivid testimonial descriptions of

the actual killings of Mr. and Mrs. Clarkson. In the light of the testimony in the case and the undisputed circumstances, the photographs could not have played any independent prejudicial part in the jury's finding of guilt and in its withholding of recommendation of life imprisonment. We are entirely satisfied that the defendant's first point presents no basis for appellate interference with his convictions and sentences.

In his second point the defendant urges that the trial court abused its discretionary powers when it denied a motion for a "change of plea to non-vult." After the State had completed its case and a witness had testified for the defendant, counsel for the defendant made his motion out of the presence of the jury. Under *R. R.* 3 :5–2 (a) (now *R.* 3 :9–2) the trial court admittedly had discretion to refuse to accept the tendered change of plea. See *State v. Forcella,* 52 *N. J.* 263, 270-271 (1968) ; *State v. Belton,* 48 *N. J.* 432, 437 (1967) ; *State v. Sullivan,* 43 *N. J.* 209, 246 (1964), *cert.* den., 382 *U. S.* 990, 86 *S. Ct.* 564, 15 *L. Ed.* 2*d* 477 (1966). Psychiatric and psychological reports made of the defendant by both the State and the defense were submitted to and read by the trial judge who heard full arguments by the defense in support of acceptance of the plea and by the State in opposition. At the conclusion of the arguments he denied the defendant's motion, pointing to the heinous nature of the offenses and to the fact that the public interest, as he conscientiously saw it, "would be better served by rejecting the plea and sending the case to a jury." *State v. Belton, supra,* 48 *N. J.,* at 439.

The record before us furnishes no basis at all for upsetting the trial judge's refusal to accept the tendered plea. Whatever be our individual views, we are not at liberty to act on defense counsel's suggestion that "the death penalty is a medieval anachronism" and should be eliminated. So long as it remains the legislative policy in our State and withstands constitutional attack (no such attack is made here) the judicial system must fairly implement it. Here,

as the State's brief stresses, there was not only armed robbery with killings in the course thereof, but evidence of "cold-blooded" murder by the defendant and conduct on his part which was "savage beyond description." The brief on the defendant's part can point to little, if anything, by way of mitigation and obviously makes no showing of abuse of discretion. The second point is rejected as clearly lacking merit.

In his third point the defendant asserts that the trial judge's charge "made mistaken remarks which may have prejudiced the jury." In the course of the charge the trial judge noted that the defendant had stated that his shooting of Mr. Clarkson was accidental and that his intent was to frighten him. In fact the defendant had testified that his intent at that point was to frighten Mrs. Clarkson rather than Mr. Clarkson. In the light of the entire case the discrepancy was trivial and surely not prejudicial. In his charge the trial judge had explicitly told the jury that its recollection of the testimony rather than his was controlling and that if there was any difference it was to rely on its own recollection. At the close of the charge, defense counsel understandably made no pertinent objection or any reference whatever to the discrepancy and under no reasonable point of view could it now be viewed either as prejudicial error or as plain error within the contemplation of R. R. 1:5-1 (now R. 2:10-2).

In his fourth and fifth points the defendant complains about certain responses by the trial judge to inquiries submitted by the jury during the course of its deliberations. The jury asked whether the sentences would "run concurrent" and whether it was possible to get "life without parole." In answer to the latter question the trial judge faithfully followed the procedure outlined by this Court in *State v. White*, 27 *N. J.* 158 (1958). He accurately advised the jury as to the incidents of parole but told its members that they should exclude that subject from their deliberations and not speculate as to whether parole would or would not be granted.

He told them that so far as they were concerned "a life sentence is a life sentence" and that, if after consideration of all of the evidence, they believed a recommendation of life imprisonment should be made it would be a violation of their duty "to refuse to make that recommendation because of the existence in another authority of the power and responsibility with respect to parole."

The defendant concedes that the trial court's charge conformed strictly with *State v. White, supra*. He urges, however, that that case should now be reconsidered and overturned and that hereafter a jury which inquires about parole should be told without more and without any explanation that it is none of its concern. In *White* we deliberately rejected that course in favor of the procedure outlined in 27 *N. J.*, at 179. We considered that the outlined procedure was the one best calculated to protect the defendant against a jury's improper use in its deliberations of the possibility of parole. *White* has been approved in many later cases here and elsewhere and nothing has occurred to cause us to alter our belief in its soundness or to depart in any respect from its guidelines. See *State v. Hudson,* 38 *N. J.* 364, 374 (1962) ; *State v. Sinclair,* 49 *N. J.* 525, 547–548 (1967) ; *State v. Laws,* 50 *N. J.* 159, 186–187 (1967), *cert.* den., 393 *U. S.* 971, 89 *S. Ct.* 408, 21 *L. Ed. 2d* 284 (1968) ; *People v. Morse,* 60 *Cal. 2d* 631, 36 *Cal. Rptr.* 201, 207–212, 388 *P. 2d* 33, 39–44, 12 *A. L. R. 3d* 810 (1964) ; *Shoemaker v. State,* 228 *Md.* 462, 180 *A. 2d* 682, 686 (1962) ; See also Hayden, "Criminal Law and Procedure," 13 *Rutgers L. Rev.* 105, 124 (1958) ; Note, 15 *Stan. L. Rev.* 349, 355–56 (1963).

In answer to the jury's question as to whether the sentences would run concurrently, the trial judge noted that the jury was fully aware of the dual murder charges and the possibility that there might be two life sentences. As to whether the life sentences would be concurrent or consecutive he said "that is a matter which is entirely up to the court after a pre-sentence investigation is made. It is a question that I can't answer even if I were inclined to give you the

answer at this time." The trial judge's response was wholly accurate and could not have caused any prejudice to the defendant. If the jury had recommended life imprisonment the judge could, in his discretion, have made the ensuing life sentences either concurrent or consecutive. See *State v. Maxey*, 42 *N. J.* 62 (1964). But neither he nor anyone else was in any position to state which course he would ultimately have chosen. We find no error in the trial judge's responses to the jury's inquiries and accordingly reject the defendant's fourth and fifth points.

The final points (sixth and seventh) advanced on the defendant's behalf urge that the jury's verdict as to the death penalty was "against the weight of the evidence" and that, if the death penalty is held to have been unjustified, it should either be modified to life imprisonment or a new trial ordered on punishment. The defendant stresses his testimony to the effect that his shooting of Mr. Clarkson was accidental but that can play little part in the light of the total picture. The State suggests that there was "nothing in the defendant's conduct before, during or after the commission of these senseless, brutal murders which warranted the mercy he sought from the jury" and that the argument that the verdict is against the weight of the evidence is "utterly absurd under all the circumstances." We need do no more than state that on the record before us the jury's verdict cannot rationally be viewed as against the weight of the evidence or as unjustified under the testimony and the controlling principles of law. We reject the defendant's final points of alleged error, as we have his preceding points, and accordingly the judgments of convictions of murder in the first degree and the sentences of death are: Affirmed.

After the foregoing was written, we received a letter from defense counsel seeking to advance various arguments of unconstitutionality including the contention that "*N. J. S.* 2A:113–3 is unconstitutional in that it subjects defendant to the death penalty, if he elects to stand trial." But see *State v. Forcella*, 52 *N. J.* 263 (1968), pet. for cert. filed in

U. S. Supreme Court on Oct. 1, 1968; see *Alford v. North Carolina*, 405 *F. 2d* 340 (4 *Cir.* 1968), prob. juris. noted, 394 *U. S.* 956, 89 *S. Ct.* 1306, 22 *L. Ed. 2d* 558 (1969) ; *Maxwell v. Bishop*, 398 *F. 2d* 138 (8 *Cir.*), *cert.* granted, 393 *U. S.* 997, 89 *S. Ct.* 488, 21 *L. Ed. 2d* 462 (1968). The defendant may file, within 30 days hereof, a formal and detailed petition for leave to present all of his arguments attacking the constitutionality of the New Jersey legislation and the imposition of his death sentences. In the meantime and until further order of this Court, the entry of judgment on the defendant's appeal will be withheld.

*For affirmance and withholding entry of judgment* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.