# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5528-14T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

MAURICE GOODEN, a/k/a MARK
THOMAS,

    Defendant-Appellant.

_____

Submitted April 4, 2017 — Decided September 26, 2017

Before Judges Ostrer and Vernoia.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Indictment No. 13-06-1626.

Joseph E. Krakora, Public Defender, attorney for appellant (Monique Moyse, Designated Counsel, on the brief).

Damon G. Tyner, Atlantic County Prosecutor, attorney for respondent (Melinda A. Harrigan, Assistant Prosecutor, of counsel and on the brief).

Appellant filed a pro se supplemental brief.

The opinion of the court was delivered by

OSTRER, J.A.D.

Defendant Maurice Gooden appeals from his 2015 conviction following a jury trial of aggravated sexual assault and robbery, and his extended term sentence. We affirm.

We discuss the pertinent facts when we address each legal issue, but begin with a brief overview. Ruth[1] was sexually assaulted and robbed in the early morning hours of April 25, 2002, in Atlantic City. As she walked home from a bus stop, a young black man she had spotted on the bus grabbed her from behind, attacked her, and dragged her into an alley. She struggled to break free, grabbed his knit hat and briefly saw his face. He then caused her head to hit a wall, knocking her out. When she awoke, she was still in the alleyway, her pants gone, her underwear halfway down her legs, and her purse and cellphone missing.

Later that day, Ruth told police her assailant was a black man in his mid-twenties, about six-foot-one-inch or six-foot-two-inches tall. A Sexual Assault Nurse Examiner examined her later at the hospital. Ruth could not recall if physical sexual contact took place. However, the nurse discovered bruising and redness in Ruth's genital area, consistent with sexual assault. Vaginal and cervical swabs were found to contain semen.

---

[1] We use pseudonyms to protect the identity and privacy of the victim.

While Ruth was in the hospital, police canvassed the area of the assault. They found keys, apparent blood, and an Atlantic County welfare identification card that belonged to defendant. Ruth failed to identify defendant from a photo array, and police unsuccessfully sought witnesses using defendant's photo.

Several years after the attack, the New Jersey State Police matched DNA recovered in Ruth's case to DNA attributed to defendant in New Jersey's DNA database. The State then obtained a buccal swab from defendant and concluded he was a likely contributor to the DNA mix recovered from Ruth.[2] The grand jury thereafter charged defendant with two counts of first-degree aggravated sexual assault — sexual penetration during a robbery and against a physically helpless victim, N.J.S.A. 2C:14-2(a) and N.J.S.A. 2C:14-2(a)(7); second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1); and second-degree robbery, N.J.S.A. 2C:15-1.

After a three-day trial, the jury convicted defendant on all counts. Judge Bernard E. DeLury, Jr., imposed a fifty-five-year persistent-offender-extended term, N.J.S.A. 2C:44-3(a), subject to the No Early Release Act, N.J.S.A. 2C:43-7.2, and Megan's Law, N.J.S.A. 2C:7-1 to -23.

---

[2] Apparently, the initial match was found in December 2006; defendant was deemed incompetent to proceed for a period of years; and the buccal swab was not collected until 2013.

On appeal, defendant presents the following points in his counseled brief:

POINT I

THE DESCRIPTION OF MR. GOODEN'S IDENTIFICATION CARD AS A "WELFARE CARD" VIOLATED HIS RIGHT TO A FAIR TRIAL. (Not Raised Below).

POINT II

THE CUMULATIVE EFFECT OF REPEATED INSTANCES OF PROSECUTORIAL MISCONDUCT WARRANTS A REVERSAL OF MR. GOODEN'S CONVICTIONS. (Not Raised Below).

POINT III

THE ADMISSION INTO EVIDENCE OF A HIGHLY PREJUDICIAL PHOTOGRAPH [DE]PRIVED MR. GOODEN OF A FAIR TRIAL.

POINT IV

THE TRIAL COURT'S OMISSION OF JURY CHARGES IN SUPPORT OF MR. GOODEN'S DEFENSE VIOLATED HIS RIGHTS TO DUE PROCESS AND A FAIR TRIAL. (U.S. Const. Amends. V, VI, and XIV; N.J. Const. (1947), Art. I, Pars. 1, 9, and 10.) (Not Raised Below).

POINT V

THE TRIAL COURT ABUSED ITS DISCRETION BY IMPOSING A MANIFESTLY EXCESSIVE SENTENCE.

Defendant also filed a pro se supplemental brief.[3]

---

[3] The pro se brief lacks point headings, contrary to Rule 2:6-2(a)(1), and is difficult to decipher, but we understand defendant to contend the State failed to prove his guilt beyond a reasonable doubt and the State obtained his buccal swab unlawfully.

A-5528-14T2

We begin with defendant's contention the State wrongfully implied he had a motive to commit robbery by repeatedly referring to his welfare ID card and emphasizing his poverty. At trial, both the prosecutor and defense counsel often referred to the card found at the scene as a welfare ID.

As defense counsel did not object, we apply a plain error standard of review, and determine whether "defendant [met] the burden of proving that the error was clear and obvious and that it affected his substantial rights." State v. Koskovitch, 168 N.J. 448, 529 (2001); see also State v. Williams, 168 N.J. 323, 336 (2001) (stating defendant must show "the error possessed a clear capacity for producing an unjust result"); R. 2:10-2. Our review "depends on an evaluation of the overall strength of the State's case." State v. Nero, 195 N.J. 397, 407 (2008) (internal quotation marks and citation omitted).

We are convinced there was no error, let alone plain error. Prosecutors generally may not "use a defendant's poverty to establish a criminal motive." State v. Stewart, 162 N.J. Super. 96, 100 (App. Div. 1978). Nor may they introduce "evidence regarding whether or not a defendant has a regular source of income . . . ." State v. Terrell, 359 N.J. Super. 241, 247 (App. Div.), certif. denied, 177 N.J. 577 (2003).

However, the State did not refer to the welfare ID to establish defendant's financial status, his motive to rob, or his criminal intent. It was introduced to place defendant at the crime scene. Defendant's failure to object undermines his newly minted claim that the evidence was misused. See State v. Smith, 212 N.J. 365, 407 (2012) (noting that the defense counsel's failure to make timely objections indicated no perceived prejudice), cert. denied, 568 U.S. 1217, 133 S. Ct. 1504, 185 L. Ed. 2d 558 (2013). Since "'there [was] something more than poverty to tie' defendant to the crime," we find no error. See State v. Zola, 112 N.J. 384, 428 (1988) (quoting Mathis, supra, 47 N.J. at 472).

## II.

Also as a claim of plain error, defendant asserts the prosecutor engaged in misconduct by: (1) relying on facts not in evidence to garner sympathy for the victim; (2) denigrating defendant; and (3) issuing a "call to arms" in her summation.

Well-settled principles guide our review. Prosecutorial misconduct may compel reversal if it "was so egregious that it deprived the defendant of a fair trial." State v. Frost, 158 N.J. 76, 83 (1999). More specifically, the conduct must be "clearly and unmistakably improper, and must have substantially prejudiced [the] defendant's fundamental right to have a jury fairly evaluate the merits of his defense." State v. Smith, 167 N.J. 158, 181–82

(2001) (internal quotation marks and citation omitted). We consider three factors: "(1) whether defense counsel made timely and proper objections to the improper remarks; (2) whether the remarks were withdrawn promptly; and (3) whether the court ordered the remarks stricken from the record and instructed the jury to disregard them." Frost, supra, 158 N.J. at 83. The claimed instances of misconduct do not meet the test.

During her opening, the prosecutor introduced Ruth to the jury and explained the difficulties she might have testifying against her attacker:

> You should know coming into this courtroom and confronting the defendant after all these years is going to be difficult for her. She dreads having to come here and sit in that chair and explain to a courtroom full of people about this horrible painful night that she just as soon forget. [Ruth] has tried to put the events of April 25, 2002 behind her. She doesn't want to bring this all up again. She's scared and she's embarrassed, and understand she's never fully acknowledged or accepted what happened to her that night. Keep in mind during the course of this trial the external factors that might be at play, rely on your common sense and life experience to tell you about cultural attitudes regarding sexual assault.

We find no merit to defendant's argument that the prosecutor argued facts not in evidence. As permitted, the prosecutor simply presented an overview of facts she expected to present during trial. See State v. Torres, 328 N.J. Super. 77, 95 (App. Div.

2000) ("A prosecutor's opening statement should provide an outline or roadmap of the State's case.  It should be limited to a general recital of what the State expects, in good faith, to prove by competent evidence.").  The State later elicited, through Ruth and her ex-husband, the emotional toll the sexual assault had on Ruth and her family.  The State did not use Ruth to inflame the jury.  Unlike in State v. Pennington, 119 N.J. 547, 566-67 (1990), upon which defendant relies, the prosecutor in this case did not place significant emphasis on Ruth as a sympathetic character.  She merely described briefly the struggle Ruth, as a sexual assault victim, might experience while testifying.  The prosecutor asked a single question about how the assault affected her marriage.

We also reject defendant's contention that the prosecutor improperly called him a liar.  She stated in opening:

> You, the jury, are the trier of fact.  Listen carefully to all the witnesses.  Use your common sense.  Does what a witness say ring true?  Does it make sense?  Who has a motive to fabricate?  At the end of this trial, I'm confident when you see and hear all the evidence, you will be able to find the defendant guilty on all counts.

Defendant again misplaces reliance on Pennington, in which "the prosecutor called [the] defendant 'a jackal,' 'a stranger to humanity,' 'a coward,' and someone with 'ice . . . where his heart should be,'" and a "'liar [who] catches himself in his own coils

. . . .'" Id. at 576-77. Such "[e]pithets [were] especially egregious when . . . the prosecutor pursue[d] a persistent pattern of misconduct throughout the trial." Id. at 577. Nothing of the sort occurred here. The prosecutor simply invited the jury to assess the weight and reliability of the testimony to come.

Finally, we decline to reverse the trial court based on defendant's contention that the prosecutor issued an impermissible "call to arms" that invited a verdict "based on partisanship and outrage." She stated:

> It's time, ladies and gentlemen of the jury, it's time, it's time to end this once and for all. It's been 13 long years. You have the power. You can tell - - you can tell [defendant] I know what you did to [Ruth] that night. I know what you did to her on April 25, 2002. I know that you beat her, I know that you sexually assaulted her, and I know that you robbed her. You have the power. You can tell him, find him guilty on all counts.

"Prosecutors are afforded considerable leeway in closing arguments as long as their comments are reasonably related to the scope of the evidence presented." Frost, supra, 158 N.J. at 82. However, they may not issue a "call to arms," asking the jury to "send a message" to the defendant and the public, since such statements could "mislead a jury as to its role and duty," State v. Hawk, 327 N.J. Super. 276, 282-83 (App. Div. 2000), and "improperly divert jurors' attention from the facts of the case

and intend to promote a sense of partnership with the jury that is incompatible with the jury's function." State v. Neal, 361 N.J. Super. 522, 537 (App. Div. 2003).

Although forceful, the prosecutor's statement here was not an inappropriate call to arms. The prosecutor did not imply the jurors would violate their oaths if they failed to convict, see Pennington, supra, 119 N.J. at 576, nor did she suggest the jury had a societal duty to convict, Hawk, supra, 327 N.J. Super. at 282. Instead, when considered in context, the prosecutor urged the jury to reach a verdict based on the evidence. Furthermore, even assuming for argument's sake that the prosecutor's comment crossed the line, it did not amount to plain error in light of the substantial evidence of guilt. See State v. Feal, 194 N.J. 293, 313 (2008) (finding an improper prosecutorial statement was not plain error based on the evidence of guilt).

### III.

Defendant argues the trial court erred by admitting into evidence, over his objection, a photograph of him from 2001 or 2002. The photo was not used in the photo array. Like the welfare ID photo, it depicted defendant as a man in his twenties with facial hair. Ruth testified that the man on the bus who attacked her had facial hair. By the time of trial, defendant was in his

forties.  Overruling the defense objection, the trial court explained:

> I think the objection regarding whether or not [the photograph] was used during the lineup is not appropriate at this point.  The question in my mind is, was this photograph obtained at or near the time of the offense to identify the defendant.  If that's the case and that's the foundation, then the objection would be overruled and the photograph may be admitted into evidence subject to your further inquiry about photo lineups that may be testified to later.

Relying on N.J.R.E. 403, defendant argues the photo's probative value was substantially outweighed by the risk of undue prejudice, because it "misled the jury into believing that it was more likely [defendant] committed the crime because he had facial hair . . . ."  We disagree.

We accord substantial deference to a trial court's evidentiary rulings, see State v. Morton, 155 N.J. 383, 453 (1998), and will overturn a N.J.R.E. 403 determination "[o]nly where there is a clear error of judgment," State v. Covell, 157 N.J. 554, 569 (1999) (internal quotation marks and citation omitted).  "[T]he admission of photographs having some probative value, even where cumulative and somewhat inflammatory, rests with the discretion of the trial judge, whose ruling will not be overturned save for abuse, as where logical relevance will unquestionably be overwhelmed by the inherently prejudicial nature of the particular

11

picture." State v. Conklin, 54 N.J. 540, 545 (1969) (internal quotation marks and citation omitted).

The photograph here was neither inflammatory nor unduly prejudicial. It put in perspective for the jury what defendant looked like in 2001 or 2002, which was relevant given the lapse of time between the crime and the trial.

## IV.

Also raised as plain error, defendant contends the trial court should have sua sponte delivered a jury instruction on third-party guilt. Defendant relies on brief testimony that police interviewed a man who was heard inquiring about the assault, shortly after it occurred, at the casino where Ruth had worked. The man did not fit Ruth's description of her attacker. The man was thirty-nine, not in his twenties, and was a few inches shorter than the attacker.

A defendant is entitled to introduce evidence of third-party guilt if it "has a rational tendency to engender a reasonable doubt with respect to an essential feature of the State's case." State v. Cotto, 182 N.J. 316, 332 (2005) (internal quotation marks and citations omitted). The defendant cannot simply present evidence of "some hostile event and leave its connection with the case to mere conjecture." State v. Sturdivant, 31 N.J. 165, 179 (1959). Instead, the defendant must demonstrate "'some link

12                                                        A-5528-14T2

between the third-party and the victim or the crime.'"  Cotto,
supra, 182 N.J. at 333 (quoting State v. Koedatich, 112 N.J. 225,
301 (1988), cert. denied, 488 U.S. 1017, 109 S. Ct. 813, 102 L.
Ed. 2d 803 (1989)).

Aside from his inquisitiveness, no trial evidence connected
the other man to the assault.  Furthermore, the State's scientific
expert testified that the chance anyone other than defendant
contributed to the DNA sample taken from Ruth was extremely remote.
Thus, the record did not justify, let alone compel, a third-party
guilt instruction.

V.

Finally, we discern no merit in defendant's challenge to his
sentence.  The court found that aggravating factors three ("[t]he
risk that the defendant will commit another offense"); six ("[t]he
extent of the defendant's prior criminal record and the seriousness
of the offenses which he has been convicted"); and nine ("[t]he
need for deterring the defendant and others from violating the
law"), N.J.S.A. 2C:44-1(a)(3), (6), and (9), outweighed mitigating
factor six ("[t]he defendant has compensated or will compensate
the victim of his conduct for the damage or injury that he
sustained"), N.J.S.A. 2C:44-1(b)(6).  The court gave aggravating
factor three "great weight" due to defendant's untreated mental
health condition, constant substance abuse, and anti-social

tendencies; but the court placed "greatest weight" on factor six, because of defendant's extensive adult and juvenile record, which involved assault, weapons offenses, and criminal sexual contact, and was "escalating rapidly and dangerously."

We discern no error in the court's rejection of defendant's proffered mitigating factors. Noting that defendant chose not to treat his known mental health conditions, the court declined to find that defendant's mental illness constituted a "ground[] tending to excuse or justify [his] conduct," N.J.S.A. 2C:44-1(b)(4), or would render the hardship of imprisonment excessive. N.J.S.A. 2C:44-1(b)(11).

In sum, we are satisfied that the court set forth its reasons for defendant's sentence with sufficient clarity and particularity, its findings were supported by the record, the court correctly applied the Code's sentencing guidelines, and did not abuse its substantial sentencing discretion. See State v. Fuentes, 217 N.J. 57, 70 (2014); State v. Cassady, 198 N.J. 165, 180-81 (2009); State v. Roth, 95 N.J. 334, 363-65 (1984).

VI.

Finally, the arguments presented in defendant's pro se brief lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5528-14T2