237 N.J. Super. 102 (1988)
567 A.2d 212
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
QUINN BRYANT, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted February 16, 1988.
Decided February 29, 1988.
*104 Before Judges BILDER, MUIR, Jr., and GIBSON.
Alan Dexter Bowman, attorney for appellant (Alan Dexter Bowman, of counsel; Lorane Posner, on the brief).
W. Cary Edwards, Attorney General of New Jersey, attorney for respondent (John M. Holliday, Deputy Attorney General, of counsel and on the brief).
PER CURIAM.
Following a jury trial 18-year-old defendant Quinn Bryant was convicted of two counts of simple assault, N.J.S.A. 2C:12-1a(3); possession of a handgun for an unlawful purpose, N.J.S.A. 2C:39-4a; and possession of a handgun without a permit, N.J.S.A. 2C:39-5b. In the same trial, he was acquitted of more serious charges of aggravated assault. He was sentenced to a term of 10 years with a minimum of 4 years for the possession of the handgun for an unlawful purpose, a concurrent term of 5 years for unlawful possession of a handgun, and a consecutive term of six months for the simple assaults (which were merged) resulting in an aggregate sentence of 10 1/2 years with a minimum of 4 years.
Defendant appeals, contending that he was denied the effective assistance of counsel, that evidence of other crimes was improperly admitted in violation of Evid.R. 55, and that the sentence was manifestly excessive.
According to the State's evidence, defendant, then 17, displayed a handgun to two individuals with whom he was having words. A police vehicle[1] appeared and defendant fled. In the following chase, defendant pointed the handgun at the police *105 officers and he himself was shot in the knee. An unloaded .22 caliber handgun was recovered at the scene.

I.
Defendant was initially charged as a juvenile but on motion of the State, after a hearing, Family Court jurisdiction was waived, see R. 5:22-2, and defendant was tried as an adult. It is with respect to the waiver hearing that defendant contends his attorney's performance was so deficient as to have denied him a fair trial. We agree.
The right to counsel is the right to effective assistance of counsel. See Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984). Counsel may be ineffective simply by failing to render adequate legal assistance. Id. at 686, 104 S.Ct. at 2063. When that failure so undermines the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result, the vindication of defendant's constitutional right requires corrective action. Id. at 686, 104 S.Ct. at 2063.
Strickland v. Washington sets up a two-pronged test for determining whether counsel's assistance was so defective as to require reversal:
First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. [Id. at 687, 104 S.Ct. at 2064]
Moreover, the defendant must identify with some particularity the acts or omissions of counsel upon which he bases his claim of ineffectiveness. Id. at 690, 104 S.Ct. at 2065. They must be more than a differing view as to sound trial strategy, id. at 689, 104 S.Ct. at 2065; they must not have been a result of reasonable professional judgment. Id. at 689-690, 104 S.Ct. at 2065.
*106 The precepts of Strickland and its tests have been adopted by New Jersey. See State v. Fritz, 105 N.J. 42, 58 (1987).
In the instant case, defendant contends he was inadequately represented at the waiver hearing and points more particularly to the failure of counsel to produce evidence of his rehabilitativeness.
At the time of the offense for which defendant was to be tried, he was 17. In order to obtain waiver, the State sought to show, in addition to the uncontroverted fact he was over 14, that there was probable cause to believe he had committed second degree aggravated assault. N.J.S.A. 2A:4A-26a. Once this was shown, waiver could occur unless defendant could show a likelihood of rehabilitation  "that the probability of his rehabilitation by the use of the procedures, services and facilities available to the court prior to [his] reaching the age of 19 substantially outweigh[ed] the reasons for waiver." N.J.S.A. 2A:4A-26a(3). See generally State v. R.G.D., 108 N.J. 1, 9-15 (1987).
In resisting the State's waiver application, defense counsel focused on the existence of probable cause and did not seek to adduce any meaningful evidence with respect to rehabilitation. The trial court found probable cause did exist and granted the waiver. In his oral opinion, the judge noted the lack of proofs as to rehabilitation.
Now, the juvenile can come forward and show that the probability of his becoming a better individual, rehab  we go through the services and facilities of the juvenile court system but there's a good probability that he will be an improved person and that they would outweigh the reasons for waiver. Unfortunately in this case the juvenile's not come forward with any evidence in that regard. The only evidence he has shown to the Court is evidence that prior to the date of the incident he was doing well at the juvenile resource center. While that would speak well for the juvenile prior to November 15th, it does not present any evidence to the Court that he would improve, be a better person and that the facilities that would be available to the Court and to the juvenile prior to reaching age nineteen would improve him in such a fashion that they would outweigh the reasons for waiver. [Emphasis supplied]
A few days after the waiver hearing, defense counsel unsuccessfully moved to expand the record to add testimony with *107 respect to rehabilitation. In support of that application he filed a petition in which he explained that he had not presented evidence of rehabilitation because it would have been inconsistent with his assertion of innocence. According to the petition, counsel felt the primary thrust of his defense was to convince the court there was a lack of probable cause; this "estopped" him from introducing evidence as to the availability of rehabilitative services; he believed such rehabilitative evidence would have amounted to an assertion of a defense of entrapment; and defendant would have had to admit his guilt in order to assert rehabilitation as a "defense". The petition also disclosed the existence of evidence in support of a claim of rehabilitativeness. That the failure to produce such evidence might well have affected the result was shown by the court's remarks (made immediately following its comments on defendant's failure to produce such evidence) which showed a genuine reluctance to order the waiver.
While this Court may not personally agree with the standard that the Court must apply insofar as determining whether a waiver should be granted or not, it's clear to me that the State has shown that under the statute a waiver is appropriate and accordingly I will grant the State's motion to grant waiver in this case.
The State characterizes the failure to produce such evidence as a mere choice of tactics. See Strickland v. Washington, supra, 466 U.S. at 689, 104 S.Ct. at 2065. We cannot agree. It was more fundamentally a lack of knowledge which disabled counsel from making a tactical choice. His notion that he could not present inconsistent defenses to the State's removal effort was not only wrong but displayed a lack of understanding of the adversarial process  a basic theorem of Anglo-American jurisprudence. The right to assert inconsistent defenses is something that is learned in the first year at law school.
We are satisfied that there is a reasonable probability that but for counsel's unprofessional errors, the result of the waiver hearing would have been different. Id. at 694, 104 S.Ct. at 2068. This requires reversal of the waiver determination and a remand for a new waiver hearing. Id. at 687, 104 S.Ct. at 2064.

*108 II.

(a)
Although we have concluded a new waiver hearing is required, defendant's remaining contentions must be considered because that hearing may yet again result in a waiver. In that event, the subsequent trial as an adult would become legitimized.
We have previously noted that the incident leading to the charges against defendant started with an altercation with two individuals. During the trial one of the two, Richard Boone, was permitted to testify, over objection, that he had observed defendant selling drugs to motorists passing Boone's house. This evidence was ruled admissible under Evid.R. 55 and the jury was promptly instructed that it could only consider the evidence as it related to why Boone remembered defendant (i.e., the credibility of his identification) and not with respect to defendant's guilt or innocence of the charges for which he was being tried. We entertain no doubt that the ruling was error. If the evidence was relevant, it could have been sanitized to make it less prejudicial. See Evid.R. 4. However, we are equally persuaded it was harmless. Defendant was convicted of the serious weapon charges. The evidence was overwhelming. The gun was found where he fell when shot. His story that the gun was "planted" by the police was rejected by the jury. The lack of prejudice flowing from "other crimes evidence" is further evidenced by the fact the jury acquitted defendant of the aggravated assault charges.

(b)
Finally, defendant contends the sentence was manifestly excessive. We agree. The sentence imposed for the possession of a handgun for an unlawful purpose was the maximum permitted by statute. The 4-year minimum term imposed upon the 18-year-old exceeded the 3-year requirement of the Graves Act. N.J.S.A. 2C:43-6c. Although the offense was serious, the *109 gun was unloaded and defendant's prior record consisted of two thefts, both of which had resulted in probation. A stern sentence reflective of the offense committed is required, see State v. Hodge, 95 N.J. 369, 377 (1984), but we find the imposition of the 10 years, the maximum possible term, and the 4-year minimum, together with the consecutive nature of the simple assault penalties, to be so clearly unreasonable as to shock the judicial conscience. See State v. Roth, 95 N.J. 334, 365 (1984).
The matter is remanded to the Family Part for a new waiver hearing. If jurisdiction is not waived, the judgment of conviction shall be vacated and the matter tried in the Family Court. If jurisdiction is waived, that portion of the judgment of conviction setting forth the sentence shall be vacated and the matter transferred to the Law Division for resentencing. In the latter event, the balance of the judgment of conviction is affirmed. Jurisdiction is not retained.
MUIR, Jr., J.A.D., dissenting:
I dissent from that part of the majority opinion that finds the sentence imposed excessive. While I recognize the issue may become moot if the Family Court Judge, on remand, decides against waiver, I conclude the trial judge imposed a sentence that satisfied the mandates of the Criminal Code as those mandates have been explicated in State v. Roth, 95 N.J. 334 (1984), State v. Hodge, 95 N.J. 369 (1984), and their progeny.
The trial judge, made the following statement for the sentence imposed:
This defendant stands convicted of attempt by physical menace to put another in fear of imminent serious bodily injury, a disorderly persons offense, possession of a weapon for an unlawful purpose, a Graves Act offense, and possession of a handgun.
The incident occurred when the defendant allegedly was selling drugs on a street corner in the City of Camden. Two private citizens confronted him and asked that he vacate the area. He is alleged to have pulled a gun and waved it in the air. He then fled down an alley and was apprehended by 2 Sheriff's Officers who were passing by the scene and who were stopped by the private *110 citizens who pointed the defendant out to them. They directed that the defendant stop and he turned around and pointed a firearm at them. He was then shot by the Sheriff's Officers in the knee and suffered physical disability.
As above indicated, this is a Graves Act offense. This court, quite frankly, was not satisfied with the explanation given by the defendant at the time of trial and his denials. As indicated at sentence, this court feels that unfortunately this defendant was treated too leniently in the juvenile system. Had he been incarcerated on the occasion when he stole money from a woman on a bus, which was technically a robbery, this day may never have happened. Instead, an attitude was developed in this defendant that the criminal justice system does not deal severely with offenders.
This court unfortunately feels that there is an absolute risk that this defendant will commit another offense. In fact, although he indicated at trial that he is not involved with drugs at all, he had a conditional discharge while this trial was pending.
The extent of his juvenile record was deemed to be an aggravating factor in light of the frequency within which he was involved in the juvenile justice system.
In addition, the offense was committed against law enforcement officers and the court found the need to deter the defendant and others from violating the law to be an aggravating factor.
By way of mitigation, the only mitigating factor the court could find was that his imprisonment will entail excessive hardship to himself or his dependents.
On a qualitative basis the court was clearly convinced that the aggravating factors substantially outweigh the mitigating factors.
Furthermore, this was a Graves Act offense.
Accordingly, on the charge of possession of a handgun for an unlawful purpose, the defendant was sentenced to a term of 10 years in prison with the further stipulation that he serve 4 years without parole.
The court further found that what set the entire incident in motion was the defendant's indiscriminate pointing of a firearm. This could have led to disastrous consequences. An innocent passerby could have been injured by the resulting gun fire.
The court felt that the only way to deter this type of activity is to impose a consecutive sentence. If consecutive sentences are not imposed for the actual use or pointing of a firearm on one who is also convicted of possession of a weapon for an unlawful purpose, an offender is not deterred from using the firearm once he possesses it for the unlawful purpose. Accordingly, the defendant was sentenced to 6 months in the Camden County Jail on the charge of attempting by physical menace to put another in fear of imminent serious bodily injury and that sentence was deemed to run consecutive.
The charge of unlawful possession of a handgun was deemed to run concurrent.
Attached to the judgment of conviction, the judge listed the aggravating factors as the risk that defendant will commit *111 another offense, N.J.S.A. 2C:44-1a(3); the extent of defendant's prior criminal record and the seriousness of the offenses of which he has been convicted, N.J.S.A. 2C:44-1a(6); defendant committed the offense against a law enforcement officer, acting in the performance of his duties while exhibiting evidence of his authority, N.J.S.A. 2C:44-1a(8); and the need for deterring the defendant and others from violating the law.
The trial judge conscientiously exercised his discretion in accordance with the principles set forth in the Code and as defined in Roth and Hodge. We therefore are not free to substitute our judgment for his by second guessing the judge's determination in the guise of shocked conscience. State v. Roth, supra, 95 N.J. at 365.
I would therefore affirm the sentence imposed.
NOTES
[1] The law enforcement officers were armed Sheriff's Officers.