604 A.2d 609

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
LAURENCE CLARK, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued February 5, 1992—Decided March 17, 1992.

Before BRODY, MUIR, Jr. and LANDAU.

*Claire Drugach,* Assistant Deputy Public Defender, argued the cause for appellant (*Wilfredo Caraballo,* Public Defender, attorney; *Claire Drugach,* of counsel and on the brief).

*Annmarie Cozzi,* Deputy Attorney General, argued the cause for respondent (*Robert J. Del Tufo,* Attorney General, attorney; *Annmarie Cozzi,* of counsel and on the brief).

The opinion of the court was delivered by

BRODY, J.A.D.

A jury found defendant guilty of three crimes arising out of an incident that occurred a month after his fifteenth birthday: first-degree aggravated manslaughter (as an accomplice), a violation of *N.J.S.A.* 2C:11–4a; second-degree possession of a

firearm with a purpose to use it unlawfully against another, a violation of *N.J.S.A.* 2C:39–4a; and third-degree unlawful possession of a handgun without a permit, a violation of *N.J.S.A.* 2C:39–5b. The judge imposed a prison term of 25 years, 12 years to be served before parole eligibility, for the aggravated manslaughter.[1] He merged the possession of a firearm for an unlawful purpose with the aggravated manslaughter, and imposed a consecutive prison term of 5 years for unlawfully possessing a handgun without a permit. Defendant and a codefendant, who was separately tried, had been indicted for purposeful or knowing murder but the jury found defendant guilty of the lesser homicide offense. We reverse the aggravated manslaughter conviction because, given the somewhat unusual facts of this case, the trial judge erred when he refused to have the jury consider whether defendant is guilty of the lesser offense of second-degree aggravated assault, a violation of *N.J.S.A.* 2C:12–1b(1).

The State presented evidence that defendant was walking on the sidewalk with two young friends, 17–year old co-defendant Kevin Elliott and 15–year old V.R. Defendant was carrying a loaded handgun. James Williams, an adult with no prior contact with the three boys, bumped into one of them as he was passing. The boys reacted with verbal threats that prompted Williams to wrestle Elliott to the ground. Williams, who was much larger than Elliott, was getting the better of the boy— defendant testified that he was choking him—when defendant shot Williams in the back, inflicting a nonfatal wound. With Williams prostrate, Elliott got to his feet, took the gun from defendant and shot Williams in the head, killing him.[2] There was conflicting evidence as to whether defendant handed the gun to Elliott or whether Elliott grabbed it out of defendant's

---

[1]The ordinary range of a prison term for aggravated manslaughter is 10 to 30 years. *N.J.S.A.* 2C:11–4c.

[2]Elliott was convicted of murder in the separate trial.

hand. Even if defendant had handed it to Elliott there remained the issue of whether he acted impulsively or with the purpose or expectation that Elliott would use the gun to shoot Williams.

The homicide count in the indictment charges simply that "Laurence Clark and Kevin Lamont Elliott ... did purposely or knowingly murder James Williams by their own conduct...." There was no evidence before the grand jury as to whether Williams was killed by the bullet defendant fired, the bullet Elliott fired or by both bullets. An investigating police officer provided the only evidence on the point. He testified, "All I know is one bullet went to the head and one to the back." At trial, the assistant prosecutor announced that the State would proceed on the theory that Williams was killed by the bullet Elliott fired and that defendant was guilty of murder solely as his accomplice.

The medical evidence at trial was that defendant's bullet caused Williams serious bodily injury, and that only Elliott's bullet killed him. Defendant asked the trial judge to instruct the jury to consider whether he was guilty of second-degree aggravated assault for firing the first bullet should it find that he was not Elliott's accomplice in firing the second bullet. He also asked the judge to include in the instructions the defense of using force to protect another person. *N.J.S.A.* 2C:3-5. The judge denied both requests. He accepted the State's argument that defendant was not being tried for any crime associated with firing the first bullet because the State chose to limit its theory of defendant's guilt to his accountability as Elliott's accomplice. The judge therefore limited the jury to finding defendant guilty of murder, or the lesser included offenses of first-degree aggravated manslaughter or second-degree reckless manslaughter, or finding him not guilty of any crime. The jury was not permitted to find him guilty of second-degree aggravated assault—a crime clearly supported by the evidence—as an alternative to finding him not guilty of any crime.

In a case where a defendant and co-defendant were indicted for murder for beating someone to death, we held that the jury must be given the option of finding the defendant guilty of only an aggravated assault as a lesser included offense if it might conclude that the victim died solely from the blows of the co-defendant. *State v. Vujosevic*, 198 *N.J.Super.* 435, 444, 487 *A.*2d 751 (App.Div.1985), *certif. den.* 101 *N.J.* 247, 501 *A.*2d 920 (1985), *habeas corpus granted Vujosevic v. Rafferty*, 844 *F.*2d 1023 (3rd Cir.1988). Depriving the jury of that option could cause it to return an unjust "all or nothing" verdict. "... [T]he injustice of an 'all-or-nothing' presentation of a criminal offense to a jury or factfinder with respect to a defendant who may in fact be guilty of only a lesser offense that is not charged is that the defendant will be found guilty of a crime he did not commit or he will be acquitted of a crime he did commit." *State v. Muniz*, 118 *N.J.* 319, 327, 571 *A.*2d 948 (1990). *See State v. Choice*, 98 *N.J.* 295, 486 *A.*2d 833 (1985); *State v. Powell*, 84 *N.J.* 305, 419 *A.*2d 406 (1980).

Here the indictment charged defendant and Elliott with murder for shooting Williams to death. The grand jury heard evidence that Williams died after being shot twice, but it had no evidence of the seriousness of either wound. The language of the indictment and the evidence before the grand jury lead us to conclude that the grand jury intended to charge defendant with murdering Williams either as a principal with the first bullet or as an accomplice with the second bullet, depending on the evidence adduced at trial. By using a single count, the grand jury assured that these charges would produce no more than one conviction.[3] *State v. New Jersey Trade*

---

[3]We would not give the indictment this expansive reading had defendant objected that doing so would deprive him of the right to be indicted for crimes associated with the first bullet or to be fairly apprised that the indictment has that meaning. By having requested the trial judge to give the indictment this broader meaning after all the evidence had been presented, defendant waived these objections. *State v. Ciuffreda*, 127 *N.J.* 73, 602 *A.*2d 267 (1992); *State v.*

*Waste Ass'n.,* 96 *N.J.* 8, 21, 472 *A.*2d 1050 (1984) ("... [S]epa-rate and distinct offenses cannot be charged in the same count of an indictment.").

The alternate charge of killing Williams with the first bullet necessarily includes the lesser offense of aggravated assault, a charge that would survive if the evidence failed to prove that defendant was an accomplice when Elliott fired the second bullet and that the first bullet killed Williams. It is unreasonable to suppose that the grand jury excused defendant from committing at least an aggravated assault when he shot Williams in the back. *See State v. LeFurge,* 101 *N.J.* at 422–423, 502 *A.*2d 35, where the Court found on the basis of the evidence before a grand jury that by indicting the defendant for theft it had necessarily concluded that he committed the lesser included offense of conspiracy to commit theft.

 The State argues that because the prosecuting attorney decided at trial not to seek a homicide conviction based on the bullet defendant fired, defendant cannot be found guilty of a lesser offense included in that homicide charge. We disagree. The grand jury determines by its indictment the charges for which a defendant must be tried. Although a prosecuting attorney may determine to abandon a charge in an indictment that cannot be supported by evidence, he or she may not abandon a charge at trial that is supported by evidence without the consent of the defendant. *R.* 3:25-1. Defendant understandably objected to withdrawing the charge of aggravated assault from the jury's consideration because he feared giving the jury an "all-or-nothing" choice.

 The *Vujosevic* court held that the trial judge's failure to charge aggravated assault was harmless error because there, as here, the jury found the defendant guilty of first-degree

---

*LeFurge,* 101 *N.J.* 404, 415–417, 419, 502 *A.*2d 35 (1986). The State does not contend that it would have presented its case differently had it known before trial that the judge would accede to defendant's request.

aggravated manslaughter. The court reasoned that if the jury had been inclined to return a less severe verdict, such as second-degree aggravated assault, it could have done so by finding the defendant guilty of second-degree reckless manslaughter. The Third Circuit disagreed with that reasoning, however, declining to speculate as to what the verdict would have been had the jury been properly instructed. *Vujosevic v. Rafferty*, 844 *F.*2d at 1027–1028. *See State v. Grunow*, 102 *N.J.* 133, 148–149, 506 *A.*2d 708 (1986). We need not agree or disagree with the view of harmless error expressed in *Vujosevic* because here the jury was not properly instructed respecting the elements that distinguish aggravated manslaughter from reckless manslaughter. Therefore, the jury was not properly given reckless manslaughter as an available verdict.

The judge explained to the jury that aggravated manslaughter and reckless manslaughter share the same element of reckless conduct. He explained this element as follows:

> With respect to the second element, in order to find that the defendant recklessly caused the death of James Williams, you must find that the defendant was aware of and consciously disregarded a substantial and unjustifiable risk that death would result from his conduct. The risk must be of such a nature and degree that considering the nature and purpose of defendant's conduct and the circumstances known to him, his disregard of that risk is a gross deviation from the standard of conduct that a reasonable person would follow in the same situation. In other words, you must find the defendant was aware of and consciously disregarded the risk of causing death. If you find that the defendant was aware of and disregarded the risk of causing death, you must then determine whether that risk that he disregarded was substantial and unjustifiable.

The judge then defined the additional feature that distinguishes aggravated manslaughter:

> In order to find the third element, you must find that the defendant acted under circumstances that manifest extreme indifference to human life. The phrase, "under circumstances manifesting extreme indifference to human life," does not focus on defendant's state of mind but, rather, on the circumstances under which you find he acted. The State must prove that the defendant acted in a way that showed he was indifferent to whether or not the victim lived or died; that is, the defendant acted in a way which showed that he did not care if someone was killed.

As instructed, the jury had to distinguish between two elements that the judge did not adequately differentiate, *i.e.*, whether defendant merely "was aware of and consciously disregarded the risk of causing death" or in addition "acted in a way which showed that he did not care if someone was killed." During deliberations, the jury understandably requested a clarification of the distinction. The judge merely repeated verbatim his original instructions.

We have recognized that instructions such as the judge gave, though based on the language of the statute, do not adequately distinguish the two crimes. The jury's attention must be focused on the different degrees of risk of death associated with each crime:

> We are persuaded that the difference between aggravated manslaughter and reckless manslaughter is the difference in the degree of the risk that death will result from defendant's conduct.... We envision that the Legislature intended that the degree of risk in reckless manslaughter be a mere possibility of death. In aggravated manslaughter, however, the additional element that death be caused "under circumstances manifesting extreme indifference to human life" elevates the risk from a mere possibility to a probability.

*State v. Curtis*, 195 *N.J.Super.* 354, 364, 479 *A.*2d 425 (App. Div.1984), *certif. den.* 99 *N.J.* 212, 491 *A.*2d 708 (1984); *See also State v. Breakiron*, 108 *N.J.* 591, 605, 532 *A.*2d 199 (1987). The judge's charge when read as a whole omits this critical aspect of the distinction.[4]

In sum, the trial judge erred in failing to instruct the jury that if it did not find defendant guilty of homicide as an accomplice it should then consider whether he committed the lesser offense of second-degree aggravated assault. In that connection the judge should also have instructed the jury respecting the elements of any defense to aggravated assault for which there was a rational basis in the evidence. By finding defendant guilty of first-degree aggravated manslaughter rath-

---

[4]The Model Jury Charge for aggravated manslaughter includes, "... the defendant must have acted in a way under circumstances involving a probability of death."

er than second-degree reckless manslaughter the jury did not render the error harmless by its verdict because it had not been properly instructed as to the distinction between those two crimes.

Defendant raises an additional point not rendered moot by our remand for a new trial. He argues that he was denied effective assistance of counsel at the Family Part waiver hearing because his attorney failed to present evidence that he would probably be rehabilitated before reaching the age of 19. *N.J.S.A.* 2A:4A–26a(3); *R.* 5:22–2(b). *See also State v. Bryant,* 237 *N.J.Super.* 102, 567 *A.*2d 212 (App.Div.1989), *rev'd on other grounds,* 117 *N.J.* 495, 569 *A.*2d 770 (1989). Assuming there is such evidence, it is not reasonably probable that its absence "materially contributed" to that court's waiver of jurisdiction. *State v. Fritz,* 105 *N.J.* 42, 58, 519 *A.*2d 336 (1987). Given the seriousness of the charges, in order to avoid waiver defendant had the burden of proving not only the probability of timely rehabilitation but also that his rehabilitation "substantially outweighs the reasons for waiver." *State v. R.G.D.,* 108 *N.J.* 1, 9–12, 527 *A.*2d 834 (1987). The Family Part judge waived that court's jurisdiction based on his finding that there is a need to deter the kind of conduct with which defendant was charged regardless of the probability of his timely rehabilitation.

The judgment convicting defendant of aggravated manslaughter as an accomplice is reversed and the matter is remanded for a new trial of that charge and any lesser included homicide offense. The trial shall also include the charge of aggravated assault, a crime the jury shall consider only in the event it finds that defendant was not an accomplice in the homicide.