**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0750-16T2

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

VEANZEIL R. ROBERTS,
a/k/a PUN, KING PUNISHER,
and BOO-BOO,

      Defendant-Appellant.

_____

Submitted October 11, 2018 – Decided January 17, 2019

Before Judges Simonelli and DeAlmeida.

On appeal from Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 05-12-2152.

Joseph E. Krakora, Public Defender, attorney for appellant (Andrew P. Slowinski, Designated Counsel, on the brief).

Dennis Calo, Acting Bergen County Prosecutor, attorney for respondent (Annmarie Cozzi, Special Deputy Attorney General/Acting Senior Assistant Prosecutor, of counsel and on the brief; John J. Scaliti, Legal Assistant, on the brief).

PER CURIAM

Defendant Veanzeil R. Roberts appeals from the August 23, 2016 Law Division order, which denied his petition for post-conviction relief (PCR) without an evidentiary hearing. We affirm.

Following a jury trial, on March 31, 2010, defendant was convicted of first-degree attempted murder, N.J.S.A. 2C:5-1 and N.J.S.A. 2C:11-3(a); second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1); third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d); fourth-degree possession of a weapon under circumstances not manifestly appropriate for its lawful use, N.J.S.A. 2C:39-5(d); and first-degree conspiracy to commit murder, N.J.S.A. 2C:11-3(a)(1),(2) and N.J.S.A. 2C:5-2. On June 18, 2010, the trial court sentenced defendant to a twenty-year term of imprisonment with an eighty-five percent period of parole ineligibility pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2.

The charges against defendant stemmed from his involvement in the egregiously brutal stabbing of Monica Penalba. The State's theory of culpability depended on establishing defendant as a member of the Latin Kings, a notoriously violent street gang. The State characterized defendant's role in the gang as an "enforcer." According to the State, defendant and another individual,

2

who was not a member of the gang at the time, savagely attacked and attempted to kill Penalba to prevent her from reporting to law enforcement authorities the kidnapping and murder of one man and the kidnapping and aggravated assault of another man. Gang members committed the crimes against these men in retaliation for robbing a high-ranking Latin Kings member of drugs and money. The evidence showed that as an enforcer in the Latin Kings, defendant used violence, brutality, and murder as means of retaliating against those who dared to steal from gang leaders. The evidence also showed that the gang used these same ruthless measures to protect those who enforced the leaders' orders, by killing, or in this case, attempting to kill, those who may have witnessed the initial retaliatory acts.

Defendant appealed his conviction, challenging the admission of evidence of his gang affiliation, including the testimony of Oscar Giorgi, and the State's graphic presentation of Penalba's testimony regarding the nature and extent of her injuries. Defendant also challenged his sentence. We affirmed, State v. Roberts, No. A-2268-10 (App. Div. Aug. 6, 2014), and our Supreme Court denied defendant's petition for certification, State v. Roberts, 220 N.J. 573 (2015).

A-0750-16T2

On February 5, 2016, defendant filed a pro se PCR petition, arguing that trial counsel rendered ineffective assistance by failing to object to the gang affiliation evidence, Giorgi's testimony that the gang sustained itself by selling drugs, and evidence of the nature and extent of Penalba's injuries, and failing to request a limiting instruction on the gang affiliation evidence. The PCR judge denied the petition, finding defendant failed to establish a prima facie case of ineffective assistance of counsel.

On appeal, defendant raises the following contentions:

POINT I

THE PCR COURT SHOULD HAVE HELD THAT DEFENDANT'S RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WAS VIOLATED BY TRIAL COUNSEL'S FAILURE TO REQUEST A LIMITING INSTRUCTION ON THE PROSECUTION'S USE OF GANG AFFILIATION EVIDENCE. [(U.S. CONST., AMEND. VI; N.J. CONST., ART. I, ¶ 10).]

(a)  Trial Counsel's Failure to Request a Limiting Instruction Satisfies the First Prong of the Strickland/Fritz[1] Standard.

(b)  Trial Counsel's Failure to Request a Limiting Instruction Satisfies the Second Prong of the Strickland/Fritz Standard.

---

[1] Strickland v. Washington, 466 U.S. 668 (1984); State v. Fritz, 105 N.J. 42 (1987).

A-0750-16T2

(c) Defense Counsel Was Ineffective in Failing to Object to the Testimony of Oscar G[i]orgi.

(d) Defense Counsel [W]as Ineffective in Failing to Object to Excessively Graphic Evidence of the Victim's Injuries.

(e) The PCR Court Should Have Granted Defendant's Petition on the Grounds of Cumulative Error.

The mere raising of a claim for PCR does not entitle the defendant to an evidentiary hearing. State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). Rather, trial courts should grant evidentiary hearings and make a determination on the merits only if the defendant has presented a prima facie claim of ineffective assistance, material issues of disputed fact lie outside the record, and resolution of the issues necessitates a hearing. R. 3:22-10(b); State v. Porter, 216 N.J. 343, 355 (2013). To establish a prima facie claim of ineffective assistance of counsel, the defendant

> must satisfy two prongs. First, he must demonstrate that counsel made errors "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." An attorney's representation is deficient when it "[falls] below an objective standard of reasonableness."
>
> Second, a defendant "must show that the deficient performance prejudiced the defense." A defendant will be prejudiced when counsel's errors are sufficiently serious to deny him "a fair trial." The

prejudice standard is met if there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." A "reasonable probability" simply means a "probability sufficient to undermine confidence in the outcome" of the proceeding.

[State v. O'Neil, 219 N.J. 598, 611 (2014) (alteration in original) (citations omitted) (quoting Strickland, 466 U.S. at 687-88, 694).]

"[I]n order to establish a prima facie claim, [the defendant] must do more than make bald assertions that he was denied the effective assistance of counsel. He must allege facts sufficient to demonstrate counsel's alleged substandard performance." Cummings, 321 N.J. Super. at 170. The defendant must establish, by a preponderance of the credible evidence, that he is entitled to the requested relief. State v. Nash, 212 N.J. 518, 541 (2013).

We review a judge's decision to deny a PCR petition without an evidentiary hearing for abuse of discretion. State v. Brewster, 429 N.J. Super. 387, 401 (App. Div. 2013). However, where no evidentiary hearing was conducted, "we may review the factual inferences the court has drawn from the documentary record de novo." State v. Blake, 444 N.J. Super. 285, 294 (App. Div. 2016). We also review de novo the trial court's conclusions of law. Ibid. Applying the above standards, we discern no reason to reverse.

A-0750-16T2

"In analyzing trial counsel's performance, [we] examine the law <u>as it stood</u> <u>at the time of counsel's actions</u>, not as it subsequently developed." <u>State v.</u> <u>Goodwin</u>, 173 N.J. 583, 597 (2002) (emphasis added). There cannot be a cognizable ineffective assistance claim when there is not yet a recognizable legal basis for actions the defendant claims counsel should have taken. <u>See</u> <u>State v.</u> <u>Fisher</u>, 156 N.J. 494, 501 (1998).

At the time of defendant's trial, res gestae was an independent basis for admitting other crimes or wrongs evidence.[2]

> Acts introduced as res gestae were not subject to a [Rule] 404(b) analysis because . . . [they] were considered to be a part of the subject matter of the action being tried. As an exception to Rule 404(b), such evidence only needed to satisfy the evidence rules relating to relevancy and the Rule 403[3] balance test.
>
> [Biunno, Weissbard & Zegas, <u>Current N.J. Rules of</u> <u>Evidence</u>, cmt. 7 on N.J.R.E. 404(b) (2018).]

---

[2] <u>State v. Rose</u>, 206 N.J. 141 (2011) and <u>State v. Goodman</u>, 415 N.J. Super. 210 (App. Div. 2010), on which defendant relies, were decided after defendant's conviction. Thus, they do not apply. Even if they applied, we agree with our prior opinion that the gang affiliation evidence was admissible under Rule 404(b) and <u>State v. Cofield</u>, 127 N.J. 328 (1992). <u>See</u> <u>State v. Roberts</u>, No. A-2268-10 (App. Div. Aug. 6, 2014) (slip op. at 45-51).

[3] Rule 403 provides: "Except as otherwise provided by these rules or other law, relevant evidence may be excluded if its probative value is substantially outweighed by the risk of (a) undue prejudice, confusion of issues, or misleading the jury or (b) undue delay, waste of time, or needless presentation of cumulative evidence."

A-0750-16T2

"In contrast to other-crimes evidence . . . res gestae evidence relates directly to the crime for which a defendant is being tried, rather than involving a separate crime." State v. L.P., 338 N.J. Super. 227, 235 (App. Div. 2001). The admission of res gestae evidence "serves to paint a complete picture of the relevant criminal transaction." Ibid. (quoting State v. Martini, 131 N.J. 176, 242 (1993)). "Thus, evidence of conduct occurring 'during the same time frame as the crime charged in the indictment will not be excluded if the evidence establishes the context of the criminal event, explains the nature of, or presents the full picture of the crime to the jury.'" Ibid. (quoting State v. Cherry, 289 N.J. Super. 503, 522 (App. Div. 1995)). "Instructing the jury on the limited uses of other-crimes evidence is unnecessary when evidence of uncharged conduct is admitted as part of the res gestae of the crime." Ibid.; see also State v. Burden, 393 N.J. Super. 159, 170 (App. Div. 2007) (holding that "[n]o limiting instruction is necessary when the 'other crimes' evidence was related to res gestae").

Under this framework, the gang affiliation evidence was admissible as res gestae evidence and no limiting instruction was necessary. The testimony concerning defendant's association with the Latin Kings was relevant to establishing a motive for his attack on Penalba and his role as an enforcer. The

8

evidence painted a complete picture of the relevant criminal transaction; established the context of the criminal event; explained the nature of; and presented the full picture of the crime to the jury.

Further, the probative value of the gang affiliation evidence was not outweighed by its apparent prejudice. This evidence explained why the events occurred as they did and defendant's motive for planning and committing the charged crimes. There was no less prejudicial evidence to prove those facts. See State v. Oliver, 133 N.J. 141, 151 (1993) (holding that "[a]n important factor in weighing the probative value of other-crime evidence is whether other, less-inflammatory evidence can prove the same fact in issue"). Accordingly, defense counsel was not ineffective in failing to object to the gang affiliation evidence and request a limiting instruction.

In addition, defense counsel was not ineffective for failing to object to Giorgi's testimony that the gang supported itself by selling drugs. Rule 404(b) excludes evidence of other crimes "to prove the disposition of a person in order to show that such person acted in conformity therewith." However, Rule 404(b) "applies only to other acts of the defendant; thus, evidence that includes references to bad conduct by the defendant's accomplices does not implicate this rule." Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, cmt. 7 on

N.J.R.E. 404(b) (2018) (emphasis added); see also State v. Figueroa, 358 N.J. Super. 317, 326 (App. Div. 2003) (finding a statement that did not implicate defendant "was not other crimes evidence as to him").

Defendant relies on State v. Mazowski, 337 N.J. Super. 275 (App. Div. 2001) and State v. Bryant, 237 N.J. Super. 102 (App. Div. 1988) to support his argument that Giorgi's testimony should have been excluded under Rule 404(b). However, these cases involve instances where the evidence of criminality related specifically to the defendants who were being charged. Mazowski, 337 N.J. Super. at 283-84 (evidence that the defendant was a drug addict was not admissible to show he had a motive to commit crimes); Bryant, 237 N.J. Super. at 108 (testimony that an individual observed the defendant selling drugs was not admissible where the defendant was convicted of weapons charges).

Giorgi's testimony clearly differs from the evidence presented in Mazowski and Bryant. Giorgi did not testify that defendant sold drugs. Rather, he made a general reference to "some" members of the Latin Kings who volunteered to sell drugs, but made no reference to defendant and did not specifically implicate defendant in the sale of drugs. Thus, Giorgi's testimony did not constitute other crimes evidence as to defendant. See Figueroa, 358 N.J. Super. at 326.

A-0750-16T2

Lastly, defendant argues that defense counsel was ineffective for failing to object to evidence regarding the nature and extent of Penalba's injuries. The complained-of evidence included Penalba's testimony about the surgeries on her eyes and arm after the attack; the showing of her scars to the jury; her demonstration of what occurred in the back of her car during the stabbing; photographs showing what she looked like before and after the attack; and the prosecutor's display of the clothing Penalba was wearing during the attack.

Demonstrative or illustrative evidence is "evidence that replicates the actual physical evidence, or demonstrates some matter material to the case." Rodd v. Raritan Radiologic Assocs., PA, 373 NJ. Super. 154, 165 (App. Div. 2004) (citations omitted). "There is nothing inherently improper in the use of demonstrative or illustrative evidence." State v. Scherzer, 301 N.J. Super. 363, 434 (App. Div. 1997). Nevertheless, relevant demonstrative evidence may be excluded if "the risk of . . . undue prejudice, confusion of issues, or misleading the jury" substantially outweighs its probative value. N.J.R.E. 403; accord State v. Feaster, 156 N.J. 1, 82-83 (1998).

Defense counsel was not ineffective for failing to object to the complained-of evidence because any challenge would have failed. "The failure to raise unsuccessful legal arguments does not constitute ineffective assistance

11

of counsel." State v. Worlock, 117 N.J. 596, 625 (1990); see Strickland, 466 U.S. at 688.

First, defense counsel objected when the prosecutor asked Penalba to come down from the witness stand, lie on the floor, and re-enact what occurred in her car during the assault. Thus, defendant's argument that counsel failed to object to this evidence is without merit.

Second, the showing of Penalba's scars was proper. To convict defendant of aggravated assault the State had to prove beyond a reasonable doubt that defendant attempted to or caused serious bodily injury to Penalba, "or cause[d] such injury purposely or knowingly or under circumstances manifesting extreme indifference to the value of human life recklessly causes such injury[.]" N.J.S.A. 2C:12-1(b)(1). Serious bodily injury is defined as "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ[.]" N.J.S.A. 2C:11-1(b).

Penalba's showing of the scarring on her body was highly probative because it demonstrated that the brutal attack caused permanent disfigurement. Moreover, this evidence was not unduly prejudicial, as Penalba merely pointed to the various parts of her body with permanent scarring from the attack. In

addition, Penalba's testimony about her multiple surgeries following the attack, including surgeries intended to salvage the functioning of her right eye, was directly relevant to the element of seriously bodily injury, and the State used it to prove that the attack caused both permanent disfigurement and loss or impairment of the function of her eye.  This was clearly admissible.

Third, the prosecutor's display of the clothing Penalba was wearing at the time of the attack was also relevant, as it was used to corroborate Penalba's testimony about her injuries by demonstrating the holes and blood on the clothing that resulted from the multiple stab wounds to her body.  Such evidence has been deemed admissible.  See Feaster, 156 N.J. at 83-84 (holding victim's blood-stained clothing was admissible, despite the claim that the evidence was highly inflammatory and cumulative).

Further, photographs of a victim are admissible if relevant unless "their probative value is so significantly outweighed by their inherently inflammatory potential as to have a probable capacity to divert the minds of the jurors from a reasonable and fair evaluation of the basic issue of guilt or innocence."  State v. Johnson, 120 N.J. 263, 297 (1990) (quoting State v. Thompson, 59 N.J. 396, 421 (1971)); State v. Micheliche, 220 N.J. Super. 532, 545 (App. Div. 1987).  The presence of blood and gruesome details in photographs do not provide automatic

13

grounds for exclusion. State v. DiFrisco, 137 N.J. 434, 500 (1994); see also State v. Belton, 60 N.J. 103, 109 (1972).

The State used before and after photographs of Penalba to establish that defendant's conduct was purposeful, an element of attempted murder, N.J.S.A. 2C:11-3(a)(1), (2) and N.J.S.A. 2C:5-1(a)(1), and caused Penalba to suffer serious bodily injury, an element of aggravated assault, N.J.S.A. 2C:12-1(b)(1). Because this evidence was critical to the State's case, the photographs were highly probative. See DiFrisco, 137 N.J. at 500; see also State v. Conklin, 54 N.J. 540, 544-45 (1969) (holding that photographs depicting the actual condition of bodies found and the nature and extent of injuries inflicted were admissible). Furthermore, defendant does not allege that the photographs were gruesome, and fails to specify how they were "excessively graphic or inflammatory" or how their presentation to the jury was unfairly prejudicial. See Strickland 466 U.S. at 694 (holding that "[t]he defendant must show that . . . but for counsel's unprofessional errors, the result of the proceeding would have been different").

For the foregoing reasons, defense counsel did not err in failing to object to the complained-of evidence, because all of it was admissible. Moreover, even if defense counsel erred in failing to object to the evidence, defendant failed to

demonstrate any prejudice resulting therefrom that would have changed the outcome. <u>O'Neil</u>, 219 N.J. at 611.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0750-16T2