**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4111-18

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

DANTE L. GORDON,

     Defendant-Appellant.

_____

Submitted January 6, 2021 – Decided April 1, 2021

Before Judges Whipple, Rose and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Indictment No. 16-10-0797.

Ricci & Fava, LLC, attorneys for appellant (Ronald J. Ricci, on the brief).

Camelia M. Valdes, Passaic County Prosecutor, attorney for respondent (Ali Y. Ozbek, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

A jury convicted defendant Dante L. Gordon of aggravated assault, N.J.S.A. 2C:12-1(b)(3), for recklessly shooting John Smith outside a 7-Eleven convenience store in Paterson. The shooting occurred in the early morning hours of February 25, 2016, shortly after defendant left a strip club. Employed as a police officer with the Paterson Police Department, defendant was off duty and carrying his personal revolver.

During the eight-day trial, the State presented the testimony of multiple law enforcement and lay witnesses. By all accounts, as defendant was leaving the 7-Eleven, he argued with Travis Mann, a homeless person, who was blocking the door. Witnesses heard defendant tell Mann: "Don't think I won't blow your brains out right now" and "tell me a reason why I shouldn't kill you or shoot you?"

Smith was standing nearby. According to his testimony, defendant fired a single shot, which "ricocheted" and struck Smith in the leg. Mann did not testify at trial. But the shooting was recorded by surveillance cameras and video footage was shown to the jury.

Defendant testified and presented the testimony of Steven Olimpio, an expert in the Attorney General Guidelines on Law Enforcement Use of Force (Guidelines). Contending Mann threatened to stab him, defendant told the jury

2

he acted under constructive authority as permitted under the Guidelines. But defendant did not display his police badge, call for police support, or render aid to Smith. Instead, defendant told Smith to "get the fuck outta here." Defendant also claimed the revolver accidentally discharged.

On appeal, defendant challenges his conviction, raising the following points for our consideration:

POINT I

THE TRIAL COURT ERRED BY PERMITTING THE STATE TO ADMIT IN EVIDENCE THAT [DEFENDANT] LEFT A STRIP[]CLUB JUST BEFORE THE SHOOTING INCIDENT OUTSIDE OF THE 7[-ELEVEN] STORE.

POINT II

THE TRIAL COURT ERRED BY RULING THAT THE DEFENSE EXPERT'S PROPOSED TESTIMONY THAT [DEFENDANT]'S HANDGUN DISCHARGED ACCIDENTALLY AND THAT [DEFENDANT] ACTED APPROPRIATELY AND WITHIN THE [GUIDELINES] WAS AN INADMISSIBLE "NET OPINION," WHICH DEPRIVED [DEFENDANT] OF A FAIR TRIAL.

POINT III

THE TRIAL COURT ERRED BY NOT GRANTING [DEFENDANT]'S REQUEST FOR AN ADVERSE INFERENCE JURY CHARGE CONCERNING THE STATE'S FAILURE TO CALL THEIR [SIC] ALLEGED VICTIM TRAVIS MANN.

3

Finding no merit in any of these contentions, we affirm defendant's convictions, but we remand for the limited purpose of correcting the judgment of conviction (JOC).[1]

## I.

Defendant's first two points challenge the trial judge's evidentiary rulings. Ordinarily, the admissibility of evidence during trial rests within "the sound discretion of the trial court." State v. Willis, 225 N.J. 85, 96 (2016). Absent a clear error in judgment, we typically uphold a trial judge's evidentiary rulings. State v. J.A.C., 210 N.J. 281, 295 (2015). We therefore afford substantial deference to trial judges when evaluating their evidentiary determinations, State v. Cole, 229 N.J. 430, 449 (2017), which we review for abuse of discretion, State v. Green, 236 N.J. 71, 81 (2018).

---

[1] Defendant was charged in a five-count Passaic County indictment with second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1) (count one); third-degree terroristic threats against Mann, N.J.S.A. 2C:12-3(a) and (b) (count two); fourth-degree aggravated assault by pointing a firearm at Mann, N.J.S.A. 2C:12-1(b)(4) (count three); and fourth-degree aggravated assault by recklessly causing bodily injury with a deadly weapon, N.J.S.A. 2C:12-1(b)(3), against Mann (count four) and Smith (count five). The jury acquitted defendant of counts one through three. Prior to trial, the State apparently moved to dismiss count "four" of the indictment, but the JOC erroneously states count "five" was dismissed. Based on our review of the record, defendant was convicted of count five of the indictment, renumbered as count four on the jury verdict sheet.

4

A.

In anticipation of testifying, defendant moved midtrial to preclude the prosecutor from asking whether he was present at a strip club just prior to the shooting, and whether he had consumed alcohol while at that establishment. During argument at the conclusion of the State's case-in-chief, defendant noted the State had not presented any evidence that defendant was intoxicated and, as such, his presence at the strip club was irrelevant. Defendant further argued that "a significant part of our community finds strip bars or go-go bars or . . . gentlemen clubs morally objectionable."

In a well-reasoned oral decision, the trial judge rejected defendant's "two-fold argument" that the probative value of the challenged evidence was outweighed by any relevance under N.J.R.E. 403, and constituted a prior bad act or wrong under N.J.R.E. 404(b). Pertinent to this appeal, the judge recognized the evidence was prejudicial in that it was different from, "for example," attending "church [and] praying," and correctly concluded the evidence was not unduly prejudicial. The judge reasoned: "It gives context; it explains what he was doing before; . . . how far he was from the 7-Eleven; why his car was parked where it was."

A-4111-18

The trial judge also aptly rejected defendant's reliance on our decision in Gustavson v. Gaynor, 206 N.J. Super. 540 (App. Div. 1985). In that case, the defendant admitted consuming two or three bottles of beer, five to six hours before a motor vehicle accident, but there was no blood test available and no eyewitness testimony corroborating the defendant's intoxication. Id. at 542-44. We concluded "[t]he mere fact that a driver had consumed some alcoholic beverages is by itself insufficient to warrant an inference that the driver was intoxicated and that the intoxication was of such a degree as to render him unfit to drive at the time of the accident." Id. at 545.

By contrast, in the present case, intoxication was not an issue. As the trial judge concluded: "There's no indication that there was intoxication here. There's no intoxication defense. There's no allegation by the State that [the shooting] occurred as a result of intoxication and that's clear." Having discerned no abuse of discretion in the judge's decision to deny defendant's application, we similarly reject defendant's renewed reliance on Gustavson.

Nor are we persuaded by defendant's alternate argument that the judge failed to sanitize the term, "strip club." On appeal, defendant contends "the jury could only conclude that [he] was a person of low moral character for being at

a strip[]club,"[2] citing – without analyzing – our decision in State v. Bryant, 237 N.J. Super. 102, 108 (App. Div. 1988), rev'd on other grounds, 117 N.J. 495 (1989).

In Bryant, the defendant was accused of aggravated assault and related weapons offenses. 237 N.J. Super. at 104. Over objection, a witness testified he observed the defendant selling drugs. Id. at 108. We determined "[i]f the evidence was relevant, it could have been sanitized to make it less prejudicial." Ibid. We nonetheless determined the error was harmless in view of the overwhelming evidence in that case. Ibid.

In the present matter, defendant's presence at the strip club did not constitute a crime or bad act. Moreover, during his cross-examination of defendant, the prosecutor never mentioned "strip club."[3] Indeed, his questioning

---

[2] During oral argument before the trial judge, defendant did not advance his sanitization argument. However, during his motion for release on bail pending appeal, defendant reiterated his arguments supporting his motion to preclude references to the strip club or sanitize the term under Bryant. We presume defendant briefed the issue in his midtrial motion to preclude that evidence.

[3] In anticipation of the prosecutor's cross-examination, defendant acknowledged that prior to the shooting he had been at the "go-go bar . . . around the corner" from the 7-Eleven visiting with the manager but he "d[id]n't remember consuming any alcohol." Prior to defendant's testimony, defense counsel strategically advised the trial judge he would pursue that line of questioning, without relinquishing his right to appeal the judge's decision.

was limited to whether defendant "had [his] loaded revolver on [him] when [he was] in the club," and whether "[t]he club serve[d] alcohol." Nor did the prosecutor ask whether defendant consumed alcohol while he was present in the club or at any time before the shooting incident.[4] And the prosecutor's only comment about the "club" in summation was a fleeting reference to the video surveillance, which depicted "defendant walking out of the club . . . and toward the 7-Eleven." We therefore discern no error in the judge's evidentiary decision.

B.

Prior to trial, defendant provided Olimpio's expert report to the State, advising that he sought to elicit opinion testimony: (1) regarding "the concept of constructive authority set in the . . . Guidelines [as to] when a police officer or off-duty police officer has the authority to unholster his handgun"; (2) that defendant acted under constructive authority when he unholstered his weapon on the date of the incident; and (3) defendant "cocked his double-action off [-]duty revolver accidentally and then accidentally discharged the gun while attempting to decock the gun and return it to its holster – with the bullet striking the ground." The State, in turn, moved to preclude Olimpio's testimony

---

[4] Although not challenged on appeal, the trial judge also determined defendant's presence in "an establishment with a gun that serves liquor . . . may be relevant . . . to . . . defendant's credibility."

contending he lacked expertise in his proffered field and the subject matter was not outside the ken of the average juror under N.J.R.E. 702; his proposed testimony constituted a net opinion under N.J.R.E. 703; and his opinion impermissibly usurped the jury's role as fact-finder "by opining about defendant's guilt or innocence" under N.J.R.E. 704 and case law.

The trial judge conducted a hearing under N.J.R.E. 104(a), during which defendant presented Olimpio's testimony. Following argument, the judge issued a cogent decision from the bench, squarely addressing the issues raised in view of the governing case law and evidentiary rules. Recounting Olimpio's testimony, including his qualifications, the judge permitted Olimpio to testify as an expert in the Guidelines, finding that subject matter is "beyond the ken of the average juror."

But the judge restricted Olimpio's testimony, prohibiting the expert from opining as to whether defendant: "properly applied constructive authority"; "accidentally or intentionally cocked the revolver"; and "accidentally or intentionally discharged the weapon." According to the judge, those opinions "require an analysis of defendant's subjective reasoning at the time of the event," thereby "invad[ing] the jury's decision-making . . . function in determining defendant's guilt or innocence in violation of Rule 704."

9

Having reviewed the video footage of the incident, the trial judge found:

> [T]he footage itself further underscores the importance of analyzing defendant's subjective reasoning and actions in understanding what he perceived that caused him to believe that it was necessary to unholster his weapon and whether he cocked it intentionally or not and whether he discharged it intentionally or not.
>
> Mr. Olimpio testified that among other things, such as the time of night, the bad area, that . . . defendant was surrounded by four men, that it caused him to feel it necessary to unholster the weapon. Viewing the video, it's clear that reasonable minds can differ.

Accordingly, the judge concluded: "The jury does not need an expert to interpret what is on that video"; the "jury can determine for itself" whether the shooting "was accidental or not."

Moreover, the trial judge determined Olimpio lacked the requisite expertise to testify about defendant's off-duty firearm "or the 'why and wherefore' as to his opinion that the cocking and discharge were both accidental." See Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 372 (2011). In reaching her decision, the judge noted Olimpio's testimony was bereft of experience with the off-duty revolver at issue, noting Olimpio never examined defendant's firearm. Nor did Olimpio testify "that he was a firearms instructor, a firearms expert, that he had some knowledge about or was involved

in the manufacturing of the weapon, the design of the weapon, anything of that nature to possess the expertise to testify about the weapon itself."

On appeal, defendant argues the judge improperly restricted Olimpio's testimony, thereby depriving defendant of a fair trial. In particular, defendant maintains the judge erroneously precluded Olimpio from testifying that defendant's actions were justified under the Guidelines, and the shooting was accidental. Defendant further challenges the judge's determination that Olimpio was not qualified to testify regarding the difference between single- and double-action revolvers.

We have carefully considered defendant's contentions in view of the applicable law, and conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2). We affirm substantially for the reasons set forth by the trial judge in her thoughtful decision. We add only the following brief comments.

Pursuant to N.J.R.E. 704, "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." However, "[e]xpert testimony that 'embraces an ultimate issue to be decided by the trier of fact,' N.J.R.E. 704, is not admissible unless the subject matter is beyond the ken of the average

11

juror." State v. Simms, 224 N.J. 393, 403 (2016). Moreover, an expert may not express an opinion regarding a defendant's guilt or innocence. State v. Cain, 224 N.J. 410, 426 (2016).

Having considered the record in view of these principles, we discern no abuse of discretion in the trial judge's evidentiary decisions concerning Olimpio's testimony. The judge permitted Olimpio to testify about the Guidelines, finding his expertise was beyond the ken of the average juror in that regard. But the judge astutely restrained Olimpio from opining on the differences between single- and double-action weapons – an area of ballistics for which he had no expertise. And the judge properly prevented Olimpio from opining whether defendant's off-duty firearm was discharged accidentally. That determination was properly reserved for the jury's consideration.

II.

In his third point, defendant claims the trial court erroneously denied his request for an adverse-inference jury instruction for the State's failure to produce Mann – the non-testifying victim – at trial. Because Mann was incarcerated in State prison at the time of trial, and equally available to the defense, defendant's contentions are unavailing. We review the failure to issue an adverse-inference charge for an abuse of discretion. State v. Dabas, 215 N.J. 114, 132 (2013).

12

An adverse inference instruction – commonly known as a <u>Clawans</u> charge – stems from the principle that the "failure of a party to produce before a trial tribunal proof which, it appears, would serve to elucidate the facts in issue, raises a natural inference that the party so failing fears exposure of those facts would be unfavorable to him." <u>State v. Clawans</u>, 38 N.J. 162, 170 (1962). The multitude of reasons for choosing not to call a witness requires a trial court to exercise caution before granting a request for a <u>Clawans</u> charge. <u>See State v. Velasquez</u>, 391 N.J. Super. 291, 306-08 (App. Div. 2007). Because that inference may be impacted by the reasons a witness was not called, "the trial court may determine that the failure to call the witness raises no inference, or an unfavorable one, and hence whether any reference in the summation or a charge is warranted." <u>Clawans</u>, 38 N.J. at 172.

Accordingly, before granting a <u>Clawans</u> charge request, the court must evaluate the party's reason for not calling a witness. <u>State v. Hill</u>, 199 N.J. 545, 562 (2009); <u>Velasquez</u>, 391 N.J. Super. at 308. The trial court must ensure that the situation warrants the charge, as the potential for prejudice is high where an erroneous charge is issued. <u>Hill</u>, 199 N.J. at 562; <u>Velasquez,</u> 391 N.J. Super. at 308. The trial court must consider "all relevant circumstances" and make findings

(1) that the uncalled witness is peculiarly within the control or power of only the one party, or that there is a special relationship between the party and the witness or the party has superior knowledge of the identity of the witness or of the testimony the witness might be expected to give; (2) that the witness is available to that party both practically and physically; (3) that the testimony of the uncalled witness will elucidate relevant and critical facts in issue[;] and (4) that such testimony appears to be superior to that already utilized in respect to the fact to be proven.

[Hill, 199 N.J. at 561-62 (quoting State v. Hickman, 204 N.J. Super. 409, 414 (App. Div. 1985)).]

Before the State rested its case, defendant made a timely application for an adverse-inference charge. Following argument, the judge issued a comprehensive oral decision denying defendant's request. In doing so, the judge cogently applied the Hill factors. Notably, the judge recognized Mann was serving a State prison term. As such, Mann was equally available to the State and defendant. Both parties could have interviewed Mann in State prison. Importantly, however, the judge issued "a writ for . . . Mann to testify on behalf of the defense once the State indicated [it] did not intend to call . . . Mann to testify." But following counsel's discussion with defendant, the defense ultimately "made a determination not to call the witness and as a result, the court cancelled the writ."

14

Viewed through that lens, we discern no reason to disturb the well-reasoned exercise of her discretion. The judge did not stray from our Supreme Court's required analysis in declining defendant's request to issue a <u>Clawans</u> charge as to the non-testifying victim here, where Mann – through the trial court – was equally available to both parties.

Affirmed and remanded for the limited purpose of correcting the JOC to reflect the proper count of conviction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION